IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CURLEY ANTONIO EDLER,
    Plaintiff,

vs.                               Case No.: 3:08cv530/WS/EMT

W. L. GIELOW, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff, an inmate proceeding pro se, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 5). Now before the court are Plaintiff's "Injunction Relief Pleading" (Doc. 7), "Deliberate Indifference" (Doc. 8), "Protection Pleading" (Doc. 13), and "Motion for Temporary Injunction" (Doc. 17), all of which shall be construed as motions for preliminary injunctions, and which will hereafter be referred to by Document Number.

      In Document 7, filed December 3, 2008, Plaintiff states that upon his arrival at Santa Rosa Correctional Institution ("SRCI") he was physically abused by several correctional officers ("CO's") (Doc. 7 at 1). Plaintiff states he has "reason to believe" that the abuse was retaliatory and occurred because Plaintiff had previously reported being sexually abused by CO's at Holmes Correctional Institution ("HCI") and had filed a lawsuit related to the incident prior to his transfer to SRCI (*id.*). Plaintiff additionally contends that he filed a grievance regarding the physical abuse at SRCI and requested a mental health sick call (*id.* at 2). Plaintiff states he has not been seen by a mental health counselor, but admits he was "examined by medical" (*id.*). Plaintiff next summarizes many of the

facts contained in the instant civil rights complaint (*see* Docs. 1, Doc. 7 at 2–5),[1] and relevant to the issues now before the court, Plaintiff states he was "gassed" on two occasions on October 31, 2008, which resulted in breathing complications (*id.*).  Following the gassing he was examined by medical staff and placed on "strip"(*id.*).  Plaintiff also complains that CO's at SRCI planted contraband in his cell and misplaced his personal property (*id.*).  Additionally, Plaintiff contends he was told that if he filed another grievance he would be gassed again, but he does not identify who made this comment (Doc. 7 at 4).  Plaintiff next states that he has "reason to believe" Lieutenant Gielow, a Defendant named in the complaint, will find out about Plaintiff's federal litigation and will move Plaintiff to another dorm where Defendant Gielow's "friends can retaliate for him," and he (Defendant Gielow) will "come 'gas' [Plaintiff] and put [him] on 'strip' again and leave [him] without any clothes, mattress (etc.)" (*id.* at 5).  Plaintiff similarly contends, that based on Plaintiff's instant request for injunctive relief, "there will be some 'form' and or 'type' of 'retaliation' taken against [him]" by unnamed persons (*id.*).  Plaintiff therefore seeks an "Injunction Order" and a "Temporary Restraining Order," noting that he is in "fear for [his] life" and needs protection (*id.*). He also asks that his legal mail be uncensored and that his life "not be in jeopardy for any form of 'retaliation'" (*id.*).

In Document 8, filed December 16, 2008, Plaintiff again alleges he was sexually abused at HCI on August 2, 2008, and that he filed a related federal civil rights complaint on August 31, 2008 (Doc. 8 at 1).  Plaintiff also states that during his incarceration at HCI he filed approximately twenty (20) grievances about the sexual abuse incident (*id.*).  Plaintiff next alleges that CO Schwartz, a CO at HCI who is named as a Defendant in Plaintiff's instant civil rights complaint (*see* Doc. 1), learned about some of the grievances and committed (or caused to be committed) various acts of retaliation against Plaintiff at HCI (Doc. 8 at 1–2).  Plaintiff additionally contends that Defendant Schwartz told Plaintiff he has "relatives" who work at SRCI and that "something severely would happen to Plaintiff upon his arrival [at SRCI] as well" (*id.* at 2).  Plaintiff then alleges he was physically abused by CO Brantley, a SRCI CO who is named as a Defendant in Plaintiff's instant complaint,

---

[1] The facts alleged by Plaintiff in the complaint (Doc. 1) are fully outlined in an order directing Plaintiff to file an amended complaint, which was issued by separate order on today's date.

upon Plaintiff's arrival at SRCI, and he was threatened by unnamed persons that he would be gassed and stripped of personal property if he reported Defendant Brantley's abuse (*id.* at 3). Next, Plaintiff again describes the gassing incidents that occurred in October 2008, but unlike the facts alleged in Document 7, Plaintiff states he was denied medical attention (*id.*). Lastly, Plaintiff again states he was placed on strip, and his personal property was misplaced or lost (*id.* at 4). He alleges that "[t]his matter of 'abuse' was deliberately and intentionally done in retaliation" for filing the earlier civil rights complaint, and as relief, he "want[s] the courts to enter an 'Injunction Order'" (*id.*).

In Document 13, filed March 2, 2009, Plaintiff alleges that his cell was searched on January 28, 2009, and legal documents relating to the instant civil rights action were stolen (Doc. 13 at 1). Plaintiff also states that on January 29, 2009, Defendant Gielow approached Plaintiff "with spoken threats and questions pertaining to his being a party [to this] action" (*id.*). On January 30, 2009, Defendant Gielow told Plaintiff he was having Plaintiff moved out of "Delta Dorm" to another dorm, and that Plaintiff would be subject to retaliation and gassing because Plaintiff filed the instant action (*id.* at 2). Plaintiff alleges that on the same day, CO Quinn, who is named as a Defendant in the underlying action, told Plaintiff to pack up his belongings because he was being moved to "Charlie Dorm" (*id.*). Plaintiff alleges that since being moved to Charlie Dorm, he has been subjected to various acts of retaliation, including the denial of meals and showers (*id.*). Plaintiff admits that he has not exhausted his administrative remedies with regard to the more recent acts of retaliation but states this "emergency rush" is because he overheard certain unnamed CO's "ploting [sic] to set [Plaintiff] up with an assault" (*id.*). Additionally, although it is unclear, Plaintiff appears to assert that he may be gassed or placed on property restriction, and he complains that certain grievances have not been answered (*id.* at 3). Plaintiff then states "this," apparently referring to Document 13, "is to seek protection from official(s) in the amount of $5,000.00 dollars from 'each defendant' if any sort of misconduct take [sic] place" (*id.* at 2–3).

In Document 17, filed March 17, 2009, Plaintiff alleges that legal mail related to the instant case was stolen by CO Webb on January 28, 2009, he has been threatened with chemical agents for filing lawsuits, and he has been subjected to sexual comments from CO's and falsely accused of "being a disturbance" (Doc. 17 at 1). Plaintiff then makes the same allegations made in Document 13 regarding Defendant Gielow's advising Plaintiff that he would be moved to another dorm and

retaliated against there, and Defendant Quinn's transferring Plaintiff to Charlie Dorm (*id.* at 2). Once at Charlie Dorm, Plaintiff alleges that CO Morgan threatened to sexually assault him (*id.* at 3). Plaintiff further alleges, much like the allegations in Document 13, that he has been denied a shower on two occasions while housed in Charlie Dorm and denied meals by Sergeant Rogers and/or CO Henry (*id.*). Lastly, Plaintiff contends that CO Williams made derogatory remarks to Plaintiff (*see id.*). As relief, Plaintiff seeks "bond" in the amount of $5,000.00 from each of the twenty-two (22) Defendants named in the underlying civil rights lawsuit (*id.*).

Granting or denying a temporary restraining order or preliminary injunction rests in the discretion of the district court. Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citing United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)); Johnson v. Radford, 449 F.2d 115 (5th Cir. 1971). The district court must exercise its discretion in the light of whether:

1. There is a substantial likelihood that plaintiff will prevail on the merits;

2. There exists a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

3. The threatened injury to plaintiff outweighs the threatened harm injunction will do to the defendant; and

4. The granting of the preliminary injunction will not disturb the public interest.

CBS Broadcasting, Inc. v. Echostar Communications Corp., 265 F.3d 1193, 1200 (11th Cir. 2001); Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); Johnson v. United States Dep't of Agric., 734 F.2d 774 (11th Cir. 1984); Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567 (5th Cir. 1974). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." All Care Nursing Serv. v. Bethesda Mem'l Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989) (quotations omitted).

Further, the purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit itself can be reviewed. Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); All Care Nursing Serv., 887 F.2d at 1537; United States v. State of Ala., 791 F.2d 1450, 1457 n.9 (11th Cir. 1986), *cert. denied*, 479 U.S. 1085, 107 S. Ct. 1287, 94 L. Ed. 2d 144 (1987). This necessitates that the relief sought in the motion be

closely related to the conduct complained of in the actual complaint.  <u>Devose</u>, 42 F.3d at 471; <u>Penn v. San Juan Hosp.</u>, 528 F.2d 1181, 1185 (10th Cir. 1975).  Also, the persons from whom the injunctive relief is sought must be parties to the underlying action.  *See* <u>In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Laboratories</u>, 72 F.3d 842, 842–43 (11th Cir. 1995).

      In Document 7, although the facts stated by Plaintiff are related to the conduct complained of in the underlying complaint, only Defendant Gielow is mentioned as a person who is likely to commit future acts of retaliation against Plaintiff.  Plaintiff, however, offers no facts to support his belief that such acts will be committed by Defendant Gielow.  At best, Plaintiff states he has "reason to believe" that Defendant Gielow will gas him or move him to a dorm where he might be harmed by friends of Defendant Gielow.  Plaintiff's speculation, quite simply, does not establish a substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted.[2]  Moreover, Plaintiff has failed to identify the nature of the relief he seeks, such as transfer to another correctional institution or placement in protective custody.  Thus, Plaintiff is not entitled to an injunction or a temporary restraining order.

      In Document 8, Plaintiff has again failed to state the nature of the injunctive relief he seeks.  To the extent Plaintiff seeks an order prohibiting future acts of physical abuse, Plaintiff offers no facts to support his conclusory and speculative suggestions that such future acts will occur.  Thus, he has failed to establish that a substantial threat exists that he will be harmed in the future.  To the extent Plaintiff seeks an injunction prohibiting placement on strip, he has failed to establish that he will suffer irreparable injury if the injunction is not granted.  To the extent he seeks an injunction regarding the preservation of his personal property, the court notes that Plaintiff failed to state a claim regarding the deprivation of his property in the underlying complaint.  Indeed, in a separate order issued by this court on today's date, Plaintiff was directed to submit an amended complaint because he failed to state a basis for liability as to many of the twenty-two (22) named Defendants (including Defendant Brantley, who is named in Document 8 as the CO who abused Plaintiff upon his arrival at SRCI), and Plaintiff was specifically advised that his property claims and his claims

---

[2]Although Plaintiff's later filings suggest he was subsequently moved to another dorm, the same filings reflect that Plaintiff was not placed on strip or gassed as he feared.  At most, Plaintiff was denied meals and showers, but such deprivations do not rise to the level of constitutional violations and do establish irreparable harm.

Case No.:  3:08cv530/WS/EMT

against Defendant Brantley are subject to dismissal because they do no constitute cognizable constitutional claims. Because it has been determined that Plaintiff's complaint (Doc. 1) fails to state a claim regarding the deprivation of his property and the actions of Defendant Brantely, Plaintiff has correspondingly failed to meet the prerequisites for injunctive relief, namely, that there is a substantial likelihood he will prevail on the merits of those claims. Therefore, Plaintiff's request for an "injunction order" should be denied.

In Document 13, Plaintiff seeks monetary relief in the event misconduct occurs in the future. The purpose of preliminary injunctive relief, however, is to preserve the status quo between the parties, not to compensate a party for future acts of misconduct committed by an opposing party or parties. Thus, Plaintiff's request for an order requiring any Defendant to pay $5,000.00 in the event of future misconduct is without merit and should be denied.[3]

In Document 17, Plaintiff alleges that CO Webb stole his legal mail, CO Morgan threatened to sexually assault him, Sergeant Rogers and CO Henry deprived him of showers and meals, and CO Williams made derogatory remarks, but none of these five employees of the SRCI are named in the underlying lawsuit. As noted *supra*, the persons from whom the injunctive relief is sought must be parties to the underlying action. In re Infant Formula Antitrust Litig., 72 F.3d at 842–43. Moreover, like Plaintiff's request in Document 13, Plaintiff's request for relief in Document 17 for "bond" from each Defendant is without merit.

Accordingly, it is respectfully **RECOMMENDED** that Plaintiff's "Injunction Relief Pleading" (Doc. 7), "Deliberate Indifference" (Doc. 8), "Protection Pleading" (Doc. 13), and "Motion for Temporary Injunction" (Doc. 17), construed as motions for injunctive relief, be **DENIED**.

---

[3]To the extent Plaintiff raises news claims in Document 13, which admittedly have not been exhausted, such claims are subject to dismissal. Moreover, the new claims do not appear closely related to the conduct complained of by Plaintiff in the complaint (Doc. 1), and it is not evident that the misconduct underlying the new claims (e.g., denial of meals or showers and unanswered complaints) were committed by any Defendant named in the complaint.

Case No.: 3:08cv530/WS/EMT

At Pensacola, Florida, this 14<u>th</u> day of May 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**