IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CURLEY ANTONIO EDLER,
       Plaintiff,

vs.                               Case No. 3:08cv530/WS/EMT

W. L. GIELOW, et al.,
       Defendants.
_____/

# O R D E R

      Plaintiff is an inmate who proceeds pro se and in forma pauperis (*see* Doc. 5). Now before

the court is Plaintiff's third amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc.

53). Upon review of the third amended complaint, the court concludes that the facts as presented fail

to support a viable claim for relief under § 1983 as to some or all of the named Defendants.[1] The

court will therefore allow Plaintiff an opportunity to clarify his allegations in a fourth amended

complaint.

      As an initial matter, the court advises Plaintiff that in several respects the third amended

complaint does not comply with the procedural requirements of this district. Twelve of the fourteen

continuation pages Plaintiff has attached to the "Statement of Facts" section of the complaint form

lack proper margins of one and one-fourth (1 1/4) inch, as required by Rule 5.1(B)(3) of the Local

Rules of the Northern District of Florida. Additionally, Plaintiff has failed to comply with the

instructions in the "Statement of Facts" section that require only a brief statement of the facts and

no legal argument. Plaintiff's allegations are verbose, hyperbolic, unnecessarily detailed, and

---

[1] Although the complaint before the court is Plaintiff's third amended complaint, the court has only
substantively reviewed one complaint to date, i.e., the initial complaint.

redundant, and he frequently strays from factual matters into legal ones. Furthermore, the instructions state that, barring extraordinary circumstances, no more than five continuation pages should be added to the "Statement of Facts" section. As the court does not consider this case to present extraordinary circumstances, five continuation pages should be ample for Plaintiff to set out the facts of his claims. Finally, in its previous order the court engaged in a very thorough review of allegations very similar to those now presented and provided Plaintiff with explicit instructions regarding amendment. In significant part, however, Plaintiff has disregarded those instructions in filing the instant complaint. Accordingly, the court outlines Plaintiff's instant, lengthy allegations only briefly before again carefully instructing Plaintiff regarding amendment. Plaintiff is cautioned that if his fourth amended complaint does not adequately comply with the court's instructions regarding amendment, the court may recommend dismissal of this action for failure to comply with an order of the court. *See* <u>Tanner v. Neal</u>, 232 Fed. App'x 924 (11th Cir. 2007) (affirming sua sponte dismissal without prejudice of § 1983 action for failure to file an amended complaint in compliance with court's prior order directing amendment, noting that plaintiff was provided with "a standard form, a clear description of what her complaint should contain, and page and exhibit limitations," but the overall form and content of her amended complaint showed that she did not comply with the district court's order after being warned of the consequences). *See also* <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988) (the continued failure to cure defects in pleading requirements as required by Rule 8(a) may result in dismissal; <u>Prezzi v. Schelter</u>, 469 F.2d 691, 692 (2d Cir. 1972). Additionally, or in the alternative, rather than recommending dismissal for the failure to comply with the court's orders, the court may recommend dismissal of one or more claims for Plaintiff's failure to state a claim for relief.

Plaintiff names seventeen Defendants in his third amended complaint, all of whom are current or former employees of the Florida Department of Corrections assigned either to Santa Rosa Correctional Institution ("SRCI") or Holmes Correctional Institution ("HCI").[2] Plaintiff complains

---

[2] In his initial complaint Plaintiff named twenty-two Defendants, twelve of whom are not named in the third amended complaint. The clerk therefore shall be directed to delete these individuals as Defendants in this action. None of the individuals named in the third amended complaint shall be added to the docket until the court has reviewed Plaintiff's fourth amended complaint.

that when he was housed at HCI, Colonel J.K. Schwartz retaliated against him for filing a civil rights complaint by having him moved to SRCI.[3]  According to Plaintiff, Schwartz must have contacted SRCI officials, in particular Lt. W.L. Gielow, to advise of Plaintiff's transfer so that he could be further retaliated against at his new location.  Upon Plaintiff's arrival at SRCI on or about October 22, 2008, correctional officers ("COs") Saria and Brantley "physically abused" Plaintiff (Doc. 53 at 7).  Plaintiff demanded to speak with a supervisor but his demand was denied; subsequently, Plaintiff was slammed into a wall headfirst, punched in the ribs, and kicked in the chest; Plaintiff identifies Brantley as the assailant who kicked him but does not state who slammed or punched him. Plaintiff further alleges that he was denied medical attention repeatedly after this incident, although it is unclear by whom.  Later on October 22, CO Ralph Butler forced Plaintiff to sign for his property without first allowing Plaintiff to examine it; Plaintiff received some, but not all, of his personal property, including legal papers.  Also, Plaintiff was placed in a cell on management meals and without a mattress, pillow, sheets, or other comfort items; additionally, there was no heat in the cell  and a window was broken.  Plaintiff made requests for clothing, sheets, etc., to CO Joel P. Taylor, who told Plaintiff he would receive the requested items within twenty-fours hours, but Plaintiff did not; rather, he was denied the items for approximately two days.  Temperatures in Plaintiff's cell were 60 degrees or less, causing Plaintiff to stay awake continually despite having suffered a migraine headache resulting from being slammed into a wall on October 22; his legs also became sore from his constant pacing to stay warm.

During the morning of October 31, COs C. R. Nelson, John Doe, and Pittman removed Plaintiff's cellmate from their cell so that shortly thereafter Nelson, Gielow, and CO W.O. Martin could stage a disturbance and, unwitnessed or videotaped, use pepper spray on Plaintiff.  Plaintiff suffers from asthma and so advised Gielow and Martin before they sprayed him.  After being sprayed, Plaintiff passed out; he does not remember how long he was unconscious but does not recall seeing anyone, including the Jane Doe nurse, enter his cell to check his condition.  When Plaintiff regained consciousness and attempted to rise to his feet, Gielow sprayed him in the face

---

[3] *See* <u>Edler v. Schwarz</u>, Case No. 5:08cv275/SPM/EMT.  This case is now closed, summary judgment having been entered in favor of three of the total of twenty-six Defendants, and voluntary dismissals or terminations entered with respect to the remaining Defendants.

and body with another chemical agent. A nurse came to his cell and instructed Plaintiff to take a shower, but as the nurse was speaking Plaintiff passed out again. When Plaintiff regained consciousness a second time, he was unable to breathe and was very weak; he declared a medical emergency but Nelson refused his requests for medical attention and to shower. Plaintiff was not taken to medical and was not permitted to shower for four and one-half hours. When he was allowed to shower, Plaintiff saw Gielow, CO Schwarz, Martin, Pittman, and CO Freeman exit the area with his personal property; Plaintiff never received an impound receipt for this property, nor was the property properly stored or safeguarded. Additionally, Plaintiff's declaration of a medical emergency, due to wheezing, coughing, and hyperventilation, was ignored. Instead, Gielow and Martin ordered that Plaintiff be returned to his prior cell, still on strip status and property restriction. While he was being returned to his cell by Gielow, Martin, and Pittman, Plaintiff again passed out; while unconscious he shook and had a bloody foam coming from his mouth. Despite his condition, Plaintiff was again denied medical attention.

During the next work shift, Sgt. R. Quinn approached Plaintiff's cell, where Plaintiff lay wheezing and coughing up thick yellow, bloody mucus; although Plaintiff "went into a temporary blackout" at that time (Doc. 53 at 16),[4] Quinn did nothing. Later, Quinn told Plaintiff to prepare to be sprayed again. On the evening of October 31, as Plaintiff lay on his cell floor inadequately clothed and wheezing, Quinn and Capt. Jackson approached his cell; Jackson falsely accused Plaintiff of creating a disturbance. Quinn and Jackson denied Plaintiff's request for medical attention and shortly thereafter, Quinn, as authorized by Jackson, gassed Plaintiff. A few minutes later, with Plaintiff coughing, wheezing, hyperventilating, and his eyes burning, Plaintiff again suffered a temporary blackout. After he opened his eyes, he remembered nothing for about five minutes, but then was hit by another round of chemical agents and, a few minutes later, yet another. None of this was videotaped. Plaintiff was removed from his cell and taken to medical, where he was examined by nurse Torino, who indicated he was "alright," despite Plaintiff's complaints of respiratory problems and pain from his beating of October 22 (Doc. 53 at 18). Plaintiff was returned

---

[4] All pages numbers are as assigned by the court's electronic docketing system, not the numbers Plaintiff may have designated.

to his cell—which had not been properly decontaminated after the use of chemical agents—where he remained on strip status and thus without proper bedding, clothing, or shoes; Plaintiff eventually sustained calluses on his left foot from pacing in his bare feet to stay warm. After Plaintiff was returned to the cell after his second gassing on October 31, and he continued to hyperventilate, wheeze, and cough, Jackson and Quinn dragged him from his cell and forced him to walk. Plaintiff "completely passed out" (*id.* at 19), but Jackson and Quinn permitted him to fall to the floor face first, breaking his nose and sustaining a knot on his forehead. Torino examined Plaintiff in the medical department and advised that Plaintiff needed to be placed in the infirmary, although she failed to document any of Plaintiff's symptoms in his medical records. Jackson and Quinn refused to place Plaintiff in the infirmary and instead moved him to a different dormitory. Plaintiff was left on strip cell status until November 8, 2008, in temperatures as low as 60 degrees and without proper clothing, linens, comfort or hygiene items, and medical attention; his requests for medical attention and comfort items to Assistant Warden J. Haas, CO Stephens, and Nelson went unheeded.

In the "Statement of Claims" section of the complaint form, Plaintiff lists First, Eighth, and Fourteenth Amendment violations. As relief, Plaintiff seeks, *inter alia*, 2.3 millions dollars in compensatory damages, $190,000.00 in punitive damages, $500,000.00 in other damages, and an unspecified injunction (Doc. 53 at 22).

First, as Plaintiff was previously informed, he has failed to allege sufficient facts to support a Fourteenth Amendment due process claim. It is well established that negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become due process violations when there exist adequate remedies under state law for Plaintiff to seek redress for the deprivation. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 543–44, 101 S. Ct. 1908, 1917, 68 L. Ed. 2d 420 (1984), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (overruling Parratt to the extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment); Rodriguez-Mora v. Baker, 792 F.2d 1524, 1527 (11th Cir. 1986). The Florida Department of Corrections ("DOC") provides an inmate grievance procedure for contesting misplaced or mishandled inmate property. Furthermore, Florida Statutes § 768.28 (1993) provides a tort remedy

for the alleged deprivation of Plaintiff's property; thus, he cannot maintain a § 1983 claim based on the alleged deprivation. Indeed, under no set of facts can Plaintiff establish that these avenues for relief are constitutionally insufficient. Moreover, Plaintiff has not alleged that he is without an adequate post-deprivation remedy for Defendants' alleged unconstitutional taking of his property. Therefore, Plaintiff cannot state an actionable claim under the Due Process Clause, and he should delete this claim from his amended complaint and drop as a Defendant any Defendant he has named only in regard to the deprivation of his personal property.

Next, to the extent Plaintiff complains that legal documents were lost or destroyed, Plaintiff is again advised that it is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under § 1983. Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). As established in Lewis, however, to successfully allege a constitutional violation based upon a denial of access to courts, Plaintiff must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved. Lewis, 518 U.S. at 350–51. The type of prejudice that is deficient in the constitutional sense is that which hinders the inmate's ability to actually proceed with his claim; there is no constitutional mandate "to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court." Id. at 353. Importantly, "the injury requirement is not satisfied by just any type of frustrated legal claim." Id. at 354. Plaintiff must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action seeking "to vindicate 'basic constitutional rights.'" Id. at 354–55 (quoting Wolff v. McDonnell, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). Furthermore, he must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of Defendants' actions. Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citing Lewis, 518 U.S. at 355); see also Bass v. Singletary, 143 F.3d 1442, 1445–46 (11th Cir. 1998). So long as Plaintiff was able to litigate his claim, he cannot demonstrate that he was unconstitutionally denied access to the courts. Wilson, 163 F.3d at 1291. Moreover, Plaintiff cannot show an injury unless he shows that the case he was unable to pursue had arguable legal merit. Lewis, 581 U.S. at 353 n.3; Wilson,163 F.3d at 1291. In the instant case, Plaintiff has not identified the type of

litigation with which he was involved, nor has he alleged any prejudice or injury as a result of the deprivation of his legal papers, aside from a vague mention of "miss[ing] several court deadlines" (Doc. 53 at 13). Thus, Plaintiff has failed to state a constitutional claim regarding this deprivation. He therefore should delete it from his fourth amended complaint, as well as drop as a Defendant any individual involved only in this alleged conduct.

To the extent Plaintiff seeks to assert a retaliation claim, such a claim is properly brought under the First Amendment, which forbids prison officials from retaliating against prisoners for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); see also Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow, 320 F.3d at 1248 (internal quotation and citation omitted).

Plaintiff is advised that broad, conclusory, speculative allegations of retaliation—such as those he alleges in the third amended complaint—are insufficient to state a claim under § 1983. Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th Cir. 1993); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987). The prisoner plaintiff must sufficiently allege facts establishing that the actions taken against him were in retaliation for filing lawsuits and accessing the courts. Wright, 795 F.2d at 968. He must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive. Jackson v. Fair, 846 F.2d 811, 820 (1st Cir. 1988). Most importantly—and conspicuously absent—in the instant case, Plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive and proceed into discovery. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). Plaintiff must come forward with more than "general attacks" on Defendants' motivations and must produce "affirmative evidence" of retaliation. Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L. Ed. 2d 750 (1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57, 106 S. Ct. 2505,

2514, 91 L. Ed. 2d 202 (1986)). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citation omitted). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . . ." Crawford-El, 118 S.Ct. at 1596–97; Harris v. Ostrout, 65 F.3d 912, 916–17 (11th Cir. 1995); see also Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).

As the court previously explained, although Plaintiff alleges that a series of unconstitutional acts occurred after his arrival at SRCI following his transfer from HCI at the behest of Schwartz, and he suggests that virtually all acts by all Defendants at SRCI were retaliatory and related, this is a very unlikely scenario. Plaintiff's allegations in Edler v. Schwarz, Case No. 5:08cv275/SPM/EMT, involved sexual abuse allegedly occurring strictly at HCI, and none of the SRCI Defendants are named or accused in that conduct. Moreover, Plaintiff has failed to allege anything beyond a personal belief that all Defendants retaliated against him because he filed a lawsuit and/or complained about abuse at HCI. For example, Plaintiff does not allege that all of the Defendants knew about the lawsuit or even that they knew Defendant Schwartz. Indeed, Plaintiff appears to assert that many of the Defendants retaliated against him for reasons other than the lawsuit, such as for filing grievances at SRCI.[5] Moreover, with regard to those Defendants who knew Defendant Schwartz or had knowledge of Plaintiff's lawsuit, mere knowledge is insufficient to state a First Amendment claim of retaliation. Plaintiff must allege specific, non-conclusory facts establishing that Defendants' acts would not have occurred but for a retaliatory motive, which Plaintiff has failed

---

[5] As Plaintiff has been informed, any unrelated claims of retaliation must be pursued in separate civil rights actions. Persons cannot be joined in one action as Defendants unless Plaintiff's claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims share a common question of law or fact. See Statement of Facts instructions in complaint form; Fed. R. Civ. P. 20.

to do.  Thus, as Plaintiff was previously advised, his retaliation claim appears to be subject to dismissal.

Plaintiff also apparently asserts a claim regarding his confinement in a strip cell.  The Eighth Amendment requires that, at the minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *see also* Hamm v. DeKalb County, 774 F.2d 1567, 1571–72 (11th Cir. 1985).  Furthermore, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions.  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992).  The challenged condition must be "extreme." *Id.* at 9, 112 S. Ct. at 1000.  While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482.  The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.

Chandler, 379 F.3d at 1289–90.

The second part of the two-part analysis is the "subjective component":

> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue.  Hudson,

503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted).  The proper standard is that of deliberate indifference.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991).  Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994).  In defining the deliberate indifference standard, the <u>Farmer</u> Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id.* at 837, 114 S. Ct. at 1979.  Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844, 114 S. Ct. at 1982–83.

<u>Chandler</u>, 379 F.3d at 1289–90.

In the instant case, the circumstances of which Plaintiff complains—including the denial of bedding and other comfort items, even in 60 degree temperatures—do not reflect that he was subject to the type of extreme conditions that posed an unreasonable risk of serious damage to health or safety.  Nor has Plaintiff adequately alleged that in confining him in a strip cell for approximately nine days prison officials acted with the requisite culpable mind.  Therefore, as presented, Plaintiff's allegations in connection with these events are insufficient to state an Eighth Amendment conditions of confinement claim.  With respect to placing an inmate in a cell that has not been adequately decontaminated after the use of a chemical agent, the court notes that such situations may pose an unreasonable risk to an inmate's health that is serious enough to trigger inquiry under the Eighth Amendment.  <u>Danley v. Allen</u>, 540 F.3d 1298, 1311 (11th Cir. 2008).  Even if Plaintiff were able to satisfy the objective prong of a conditions of confinement claim with respect to exposure to an undecontaminated cell, however, he has not alleged facts sufficient to satisfy the subjective prong, i.e., that any Defendant knew of, yet disregarded, a substantial risk of harm to Plaintiff by returning him to his cell prior to proper decontamination.  As presented, therefore, Plaintiff has not stated a claim for relief.

Next, Plaintiff alleges numerous instances of the refusal to provide medical treatment or inadequate medical treatment.  He is advised of the following.  Medical treatment violates the Eighth

Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). As with other conditions of confinement claims, stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, with respect to medical claims, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. at 298) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. *Id.* at 1258. As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle v. Gamble, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235,

1245–46 (11th Cir. 2003) (citing <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999); <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n.4 (5th Cir. 1980).

As to the Jane Doe nurse, Plaintiff has not alleged conduct which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" <u>Taylor v. Adams</u>, 221 F.3d 1254, 1257 (11th Cir. 2000). Nor has Plaintiff adequately alleged that she possessed a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted). The Jane Doe nurse therefore should be deleted as a Defendant in this action. With regard to Plaintiff's other claims of denial of adequate medical care, he must identify specifically the Defendant he alleges was responsible for each incident; additionally, if they exist, Plaintiff must allege with particularity facts that indicate, in each alleged instance, that the Defendant at issue acted with deliberate indifference, including that he or she had subjective knowledge of a risk of serious harm to Plaintiff, i.e., had knowledge of Plaintiff's asthma condition and the effect of chemical agents on him, but disregarded that risk by failing to provide needed medical attention after he had been exposed to such agents. <u>Farrow</u>, 320 F.3d at 1245–46. Absent such allegations, Plaintiff will be unable to establish an Eighth Amendment medical claim.

Claims of excessive force by prison officials also fall under the Eighth Amendment's proscription against cruel and unusual punishment, and likewise the applicable standard has a subjective and an objective component. Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." <u>Whitley v. Albers</u>, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). The objective component requires that a determination that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *See* <u>Wilson v. Seiter</u>, 501 U.S. at 303. In situations involving allegations of excessive force, the Supreme Court has abrogated any requirement that the resulting injury be "significant." <u>Hudson</u>, 503 U.S. at 9. Specifically with regard to the use of chemical agents as a means of force against recalcitrant

inmates who refuse to obey an order, such use generally does not, in itself, violate the Eighth Amendment. *See* Danley, 540 F.3d at 1307 (holding, with regard to pretrial detainee's excessive force claim, that the use of "pepper spray is an accepted non-lethal means of controlling unruly inmates" and that "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"). This is true even though chemical agents, by their very nature, are "designed to disable a [person] by causing intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx," and, occasionally, "disorientation, anxiety, and panic in the person sprayed." *Id.* at 1309 (citing cases). Thus, this degree of pain is constitutional because the effects are temporary, or at least are intended to be. Nevertheless, even the temporary pain caused by the use of chemical agents may be constitutionally cognizable when the chemical agents are used unnecessarily. Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002)); *see also* Rhodes, 452 U.S. at 346 ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'") (citation omitted). *See also* Thomas v. Bryant, 614 F.3d 1288 (11th Cir. 2010) (holding, *inter alia*, that district court did not err in concluding that DOC's policy permitting non-spontaneous use of chemical agents on inmates with mental illness violated the Eighth Amendment).

Plaintiff's allegations against Saria—that he "physically abused" Plaintiff on October 22, 2008, are insufficient to state a claim for relief. Saria should therefore be deleted as a Defendant from the fourth amended complaint. Plaintiff's allegations of the use of excessive force by Brantley on October 22, 2008, and by other Defendants on October 31, 2008, should be presented in a straightforward, concise statement of the facts that will permit the court to determine—under the standard outlined above—whether, as to any of those Defendants, Plaintiff has adequately alleged a claim of the use of excessive force.

The court addresses two additional matters. Plaintiff's request for "injunction relief" is unclear because Plaintiff has not specified the nature of the injunctive relief demanded. Therefore, as he was previously informed, in amending Plaintiff must clarify the relief he seeks. Additionally, in the "Statement of Claims" section of the complaint form Plaintiff refers to all paragraphs of the third amended complaint with respect to each of his claims. Not every paragraph of the complaint,

however, in fact relates to each of Plaintiff's claims. In amending, therefore, Plaintiff must correlate each numbered claim only to the appropriate facts set out in the "Statement of Facts" section.

To amend his complaint, Plaintiff must completely fill out a new civil rights complaint form, marking it "**Fourth Amended Complaint**." Plaintiff should determine which incident or issue he desires to litigate in this action, and present only those claims which: (1) arise out of the same transaction or occurrence **and** (2) share a common question of law or fact. Plaintiff must then limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Plaintiff should file the amended complaint with an original signature and keep an identical copy for himself. He should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint. The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment. Furthermore, Plaintiff should not submit service copies of his complaint unless and until the court directs him to do so.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use in actions under 42 U.S.C. § 1983. This case number should be written on the form.

2.      Plaintiff shall have **THIRTY (30) DAYS** in which to file an amended civil rights complaint, which shall be typed or clearly written, submitted on court form, and marked "Fourth Amended Complaint."

3.      Failure to submit an amended complaint that complies with the instructions in this order will result in a recommendation of dismissal of this action.

4.      The clerk shall terminate as Defendants in this action the following parties:  David Ellis, Cannon, R.W. Romine, T.M. Reyes, Gilbert, Shell, Banks, Franchise, Robernette, Wheeler, G. Davis, and Lawson.

**DONE AND ORDERED** this 7th day of October 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**